OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

---

<table>
<tr><td>OPINION</td><td>:</td><td rowspan="2">No. 90-801</td></tr>
<tr><td>of</td><td>:</td></tr>
</table>

|                         |   |                 |
|-------------------------|---|-----------------|
| OPINION                 | : | No. 90-801      |
| of                      | : |                 |
|                         | : | OCTOBER 2, 1990 |
| JOHN K. VAN DE KAMP     | : |                 |
| Attorney General        | : |                 |
|                         | : |                 |
| JACK R. WINKLER         | : |                 |
| Deputy Attorney General | : |                 |
|                         | : |                 |

---

THE HONORABLE MICHAEL D. BRADBURY, DISTRICT ATTORNEY OF THE COUNTY OF VENTURA, has requested an opinion on the following question:

Must a California peace officer accept custody of a person who has been placed under citizen's arrest for a crime when requested to do so by the person who made the arrest if the officer is satisfied that there is insufficient grounds for making a criminal complaint against the person arrested?

CONCLUSION

A California peace officer must accept custody of a person who has been placed under citizen's arrest for a crime when requested to do so by the person who made the arrest even though the officer is satisfied that there is insufficient grounds for making a criminal complaint against the person arrested but the officer may then release the person from custody pursuant to Penal Code section 849, subdivision (b)(1).

ANALYSIS

We begin by reviewing the statutes which define an arrest, the authority of persons to make an arrest, and the duties of persons who have made an arrest.

Section 834[1] provides:

"ARREST DEFINED. BY WHOM DEFINED. An arrest is taking a person into custody, in a case and in the manner authorized by law. An arrest may be made by a peace officer or by a private person."

---

[1]Section references are to the California Penal Code unless otherwise indicated.

Section 835 provides:

"An arrest is made by an actual restraint of the person, or by submission to the custody of an officer. The person arrested may be subjected to such restraint as is reasonable for his arrest and detention."

Section 837 provides:

"ARRESTS BY PRIVATE PERSONS. A private person may arrest another:

"1. For a public offense committed or attempted in his presence.

"2. When the person arrested has committed a felony, although not in his presence.

"3. When a felony has been in fact committed, and he has reasonable cause for believing the person arrested to have committed it."

Section 847 provides in part:

"A private person who has arrested another for the commission of a public offense must, without unnecessary delay, take the person arrested before a magistrate, or deliver him to a peace officer. There shall be no civil liability on the part of and no cause of action shall arise against any peace officer, acting within the scope of his authority, for false arrest or false imprisonment arising out any arrest when:

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"(c) When such arrest was made pursuant to the requirements of Penal Code Sections 142, . . ."

Section 849 provides in part:

"(a) When an arrest is made without a warrant by a peace officer or private person, the person arrested, if not otherwise released, shall without unnecessary delay, be taken before the nearest or most accessible magistrate in the county in which the offense is triable, and a complaint stating the charge against the arrested person shall be laid before such magistrate.

"(b) Any peace officer may release from custody, instead of taking such person before a magistrate, any person arrested without a warrant whenever:

"(1) He or she is satisfied that there are insufficient grounds for making a criminal complaint against the person arrested.

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"(c) Any record of arrest of a person released pursuant to paragraphs (1) and (3) of subdivision (b) shall include a record of release. Thereafter, such arrest shall not be deemed an arrest, but a detention only."

We understand the citizen's arrest referred to in the question to be an arrest made by a private person who is not a peace officer. We are asked whether a peace officer must accept custody of a person placed under citizen's arrest when requested to do so by the person making the arrest. The governing statute is section 142, subdivision (a) which provides:

"Any peace officer who has the authority to receive or arrest a person charged with a criminal offense and willfully refuses to receive or arrest such person shall be punished by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the state prison, or in a county jail not exceeding one year, or by both such fine and imprisonment."[2]

Section 142, subdivision (a) has been interpreted in three California appellate court decisions. In *Shakespeare* v. *City of Pasadena* (1964) 230 Cal.App.2d 375 plaintiff contracted to sell land to defendant. Defendant claimed that plaintiff was committing waste. When defendant entered the premises, plaintiff arrested him for trespass and delivered him to peace officers who were present. Defendant was acquitted of the trespass charge and sued the city for false arrest. At page 382 the court stated:

"It is clear that the complaint states no cause of action against the city for false arrest. As respondent points out, the complaint is not clear as to who made the arrest, but appellant contends in his brief that the arrest was a citizen's arrest made by Zervos, who then delivered custody of plaintiff to the officers. We treat the case on this basis. By express statute, the officers under these circumstances are not liable for their actions (Pen. Code, § 847) and, in fact would themselves have been criminally liable had they refused to take plaintiff into custody. (Pen. Code, § 142.)"

In *Kinney* v. *County of Contra Costa* (1970) 8 Cal.App.3d 761 a sewing machine repairman arrested Mrs. Kinney in his shop for disturbing the peace after an argument over the repair of her sewing machine. The sheriff's office was called, and Mrs. Kinney was delivered to a deputy who took her to the jail and booked her. Mrs. Kinney sued the shopkeeper, the deputy, and the county for false arrest and false imprisonment. She appealed judgments in favor of the deputy and the county. The court affirmed the judgments, holding at page 767 that the shopkeeper followed his statutory duty under section 847 by delivering Mrs. Kinney to the deputy after he had arrested her for disturbing the peace and that the deputy "in accordance with his statutory duty (§ 849 . . .) accepted such delivery and booked her in at the county jail." The court observed that section 142 provided that "every peace officer who willfully refused to receive any person charged with a criminal offense is himself guilty of a felony" and added that the subject of a citizen's arrest is a "person charged with a criminal offense" within the meaning of section 142. The court then noted that section 847 provided that no cause of action for false arrest or false imprisonment would arise when an officer followed the requirements of section 142. (*Id.* at pp. 767-769.)

In *People* v. *Pringle* (1984) 151 Cal.App.3d 854 a police sergeant stopped Sandra on suspicion of drunk driving and made a radio request for a drunk driving patrol car. Officer Pringle responded, conducted field sobriety tests which Sandra failed, and placed her under arrest for drunk driving. On the way to the police station Pringle stopped the patrol car and had sexual

<hr />

[2]Before its amendment by chapter 829, Statutes of 1970, section 142 provided:

"Every sheriff, coroner, keeper of a jail, constable, or other peace officer, who wilfully refuses to receive or arrest any person charged with a criminal offense, is punishable . . . ."

intercourse with Sandra and then released her from custody. Pringle was charged with violating section 142 and assault and was convicted of the section 142 charge but acquitted on the assault charge. Pringle appealed and the prosecution argued that while Pringle arrested Sandra within the meaning of section 142, he nevertheless violated that section by failing to "receive" Sandra after the arrest. The court rejected the argument and reversed the conviction. The court observed at pages 857-858:

"The issue, therefore, is how to construe the word receive in section 142. Resolution of this issue is aided by consideration of the first part of the statute as it read from its enactment in 1872 until it was rewritten in 1970: `Every sheriff, coroner, keeper of a jail, constable, or other peace officer, who wilfully refuses to receive or arrest any person charged with a criminal offense, is punishable . . .' (Former Pen. Code, § 142, first amended in 1970 by Stats. 1970, ch. 829, § l.l, p. 1563.) The word receive in the 1872 statute seems most logically to have referred only to the duty of jailers and persons performing like functions to receive prisoners and the duty of police officers to receive persons arrested by citizens, with the word `arrest' logically referring to the similar duty of police officers to make arrests. This construction is supported by the fact that the only recorded litigation involving section 142 has occurred in situations involving the duty of jailers to receive prisoners (see Comment, Some Proposals for Modernizing the Law of Arrest (1951) 39 Cal.L.R. 96, 103) and the duty of peace officers to receive persons arrested by citizens (e.g., *Kinney* v. *County of Contra Costa* (1970) 8 Cal.App.3d 761; *Shakespeare* v. *City of Pasadena* (1964) 230 Cal.App.2d 375, 382).

"Perhaps more significant is the fact that the broad construction urged by respondent would create an untenable conflict with Penal Code section 849, the purpose of which is to vest peace officers with discretion to release persons arrested by officers or citizens `when the situation and circumstances dictate.' (52 Ops.Atty.Gen. 55, 68 (1969).) To construe section 142 as prescribing criminal sanctions for release of an arrestee before `release is authorized by law,' as respondent urges, would result in sanctions for an improper exercise of discretion under section 849. This would draw such a tenuous line between the valid exercise of discretion under section 849 and the violation of section 142 (the sole determining factor being the propriety of the officers `satisfaction' as to whether there were sufficient grounds for making a criminal complaint) that few officers would risk criminal sanctions by exercising their discretion under section 849.

"Ultimately, the only basis urged by respondent for adding the concepts of `retention' and `production before a magistrate, clerk, or jail facility officer' to the word `receive' in section 142 is that such broad construction is necessary to ensure that arrestees are held in custody until disposed of in a lawful manner. Implicit in this argument is the proposition that because no criminal statute was directly applicable to Pringle's wrongdoing, the most closely related statute should be stretched to fit the facts of the case. . . ." [The court added that Pringle could have been prosecuted for failure to take Sandra before a magistrate, clerk, or jail facility officer without delay and concluded Pringle was prosecuted under the wrong statute.]

The 1970 amendment of section 142 replaced the enumeration of officers with the words "any peace officer." We believe that this amendment was intended to make the section applicable to those persons who are designated peace officers by the provisions of chapter 4.5, title 3, part 2 (§ 830 et seq.) of the Penal Code, which chapter had been added by chapter 1222, Statutes of 1968.

In all three cases cited above the courts interpreted section 142 as imposing a duty upon a peace officer to receive a person who had been placed under citizen's arrest with criminal penalties attached to a wilful refusal to receive such a person. In the *Kinney* case the court specifically construed the words "person charged with a criminal offense" in section 142 to include the subject of a citizen's arrest. We therefore conclude that every California peace officer has a mandatory duty to receive custody of a person who has been placed under citizen's arrest when requested to do so by the person who made the arrest whether or not the officer believes there are grounds for making a complaint against the person arrested. We believe the manifest purpose of the Legislature in imposing this duty was to minimize the potential for violence when a private person restrains another by a citizen's arrest by requiring that a peace officer (who is better equipped by training and experience) accept custody of the person arrested from the person who made the arrest.

Once the peace officer has received custody of a person subjected to a citizen's arrest, the officer's duty under section 849, subdivision (a) is to take the person "before the nearest or most accessible magistrate in the county in which the offense is triable." However, subdivision (b) of section 849 gives the officer the option of releasing the arrested person from custody whenever "he or she is satisfied that there are insufficient grounds for making a criminal complaint against the person arrested." Since the question posits that the officer is satisfied that there are insufficient grounds for making a complaint against the person arrested, the officer is authorized by section 849, subdivision (b)(1) to release the person from his or her custody.

\* \* \* \* \*